UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                Plaintiff,                      **MEMORANDUM AND ORDER**
   -v.-                                        05-CV-1931 (DRH) (ETB)

ONE (1) VYATSKIE POLYANY MACHINE
BUILDING PLANT "MOLOT" VEPR RIFLE,
SERIAL NUMBER 03KK7846; THIRTY (30)
7.62 x 39 MILLIMETER CALIBER RIFLE
CARTRIDGES,

                Defendants.
_____

**APPEARANCES:**

**For the Plaintiff:**
**ROSLYNN R. MAUSKOPF**
**United States Attorney, Eastern District of New York**
610 Federal Plaza, 5th Floor
Central Islip, New York 11722
By: James H. Knapp, A.U.S.A.

**Claimant Daniel F. Walker, Pro Se**
119 Williams Avenue
Amityville, New York 11701

**HURLEY, District Judge:**

        Plaintiff United States of America ("Plaintiff" or "United States") brings this civil forfeiture action seeking a judicial determination of forfeiture of the following two defendants in rem: (1) Vyatskie Polyany Machine Building Plant "MOLOT" VEPR Rifle, Serial Number 03KK7846; and (2) Thirty (30) 7.62 x 39 Millimeter Caliber Rifle Cartridges (the "Defendants"). The United States has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, the motion is granted.

## BACKGROUND

The material facts, drawn from the Complaint and Plaintiff's Local 56.1 Statement, are undisputed.[1]

On June 1, 1977, Daniel Floyd Walker ("Walker") was acquitted by reason of mental disease or defect of the charges of Assault in the First Degree, Assault in the Second Degree, and Reckless Endangerment in the First Degree, in connection with the 1973 shooting of a Suffolk County Police Officer. (Compl. ¶ 7.) On June 30, 1977, the Honorable Joseph Jaspan, Acting Justice of the Supreme Court of the State of New York, committed Walker to the custody of the Commissioner of the Department of Mental Hygiene, pursuant to N.Y. Crim. Proc. L. § 330.10. (*Id.* ¶ 8 and Ex. 1.) Following a hearing conducted on June 6, 1978, Walker was discharged. (*Id.* ¶ 9 and Ex. 2.)

Many years later, on or about November 3, 2004, Walker completed and signed a Department of the Treasury, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Form 4473 to purchase Defendants from American Outdoor Sports, a federally licensed firearms dealer, located in Farmingdale, New York. (*Id.* ¶ 10 and Ex. 3.) Question 12(f) on that form asked: "Have you ever been adjudicated mentally defective . . . or have you ever been committed to a mental institution?" (*Id.* Ex. 3.) Walker responded "No." (*Id.*)

On November 3, 2004, American Outdoor Sports contacted the National Instant Criminal Background Check System ("NICBCS") to verify that Walker was not prohibited from

---

[1] Plaintiff timely served claimant Daniel Floyd Walker with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" pursuant to Local Rule 56.2. Although Walker did not file an opposing Local 56.1 Statement, his Answer to the Complaint as well as his opposition papers to the instant motion do not contest any of Plaintiff's factual assertions.

possessing or receiving a firearm in violation of the federal Gun Control Act, 18 U.S.C. §§ 1921, et seq., based on any false statements on Form 4473. (*Id.* ¶ 13.) American Outdoor Sports received a response of "delayed" from NICBCS, indicating that there was insufficient information available at the time to determine Walker's status. (*Id.* ¶ 14.) NICBCS's response of "delayed" prevented Walker from acquiring the Defendants on November 3, 2004. (*Id.* ¶ 15.)

On or about November 9, 2004, Walker returned to American Outdoor Sports and completed Section C of ATF Form 4473, certifying that the responses he had given on November 3, 2004 were still correct and true. (*Id.* ¶ 18 and Ex. 3.) Having received no notification from ATF that the sale of Defendants to Walker would violate the federal Gun Control Act, American Outdoor Sports sold the Defendants to Walker.[2] (*Id.* ¶ 19.)

ATF subsequently learned that Walker was prohibited from receiving or possessing a firearm or ammunition because of his 1977 commitment following his acquittal. (*Id.* ¶ 20.) Accordingly, on or about November 24, 2004, ATF seized Defendants from Walker. (*See* Declaration of Matthew Myerson, dated July 7, 2006, ¶ 2.)

By certified letter dated February 6, 2005, the ATF notified Walker of his right to contest the seizure and forfeiture. (*Id.* ¶ 4 and Ex. A.) On February 22, 2005, the ATF received a claim to the Defendants from Walker, who asserted as follows:

> I own the above mentioned rifle. I need the rifle for security
> during a time of war. The United States of America is presently
> engaged in a war with no for[e]seeable end; with an enemy unlike
> any we have ever encountered. I believe a "well armed militia" is

---

[2] Pursuant to 18 U.S.C. § 922(t)(1)(B)(ii), American Outdoor Sports would be permitted to deliver Defendants to Walker if, after the passage of three business days, NICBCS had not notified American Outdoor Sports that the sale of Defendants to Walker would violate 18 U.S.C. §§ 922(g) or 922(n).

> as important and necessary today as it was during the American
> Revolutionary War. I am a natural born citizen of the United
> States of America.

(*Id.* Ex. B.) In response to Walker's claim, the ATF referred the matter to the Office of the United States Attorney for the Eastern District of New York. (*Id.* ¶ 7.)

On April 20, 2005, the United States commenced the instant civil forfeiture action against the Defendants. On April 21, 2005, the Court issued a Warrant of Arrest for Articles in Rem against the Defendants. Thereafter, Walker filed a pro se Answer to the Complaint wherein he "urge[s] [the Court] not to take away [his] Constitutional right to bear arms." (Answer ¶¶ 2, 4.) On May 2, 2005, Walker filed a verified claim to the Defendants.

Presently before the Court is the motion by the United States for summary judgment, seeking judicial determination of forfeiture of the Defendants to the United States. For the reasons stated below, the motion is granted.

## DISCUSSION

18 U.S.C. § 924(d)(1) provides that "[a]ny firearm or ammunition involved in or used in any knowing violation of subsection . . . (a)(6) . . . [or] (g) . . . of section 922 . . . shall be subject to seizure and forfeiture." 18 U.S.C. § 924(d)(1). Subsection (a)(6) of section 922 provides that "[i]t shall be unlawful for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a . . . licensed dealer . . . knowingly to make any false or fictitious oral or written statement . . . intended or likely to deceive such . . . dealer . . . with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter." 18 U.S.C. § 922(a)(6). Subsection (g)(4) of section 922 provides that "[i]t shall be unlawful for any person who has

4

been adjudicated as a mental defective or who has been committed to a mental institution to . . . possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g).

Here, Walker does not contest that he knowingly made a false statement on ATF Form 4473. He also does not dispute that he was committed to the custody of the Commissioner of the NYSDMH following his acquittal by reason of mental disease or defect regarding the 1973 shooting of a Suffolk County police officer. Instead, he contends that 18 U.S.C. § 922(g)(4) is unconstitutional because it *permanently* denies any person who has been committed to a mental institution of the right to possess any firearm or ammunition. In support of his argument, he cites section 53a-217c of the Connecticut General Statutes which provides that "[a] person is guilty of criminal possession of a pistol or revolver when such person possesses a pistol or revolver [and] has been discharged from custody within the preceding twenty years after having been found not guilty of a crime by reason of mental disease or defect." Conn. Gen. Stat. § 53a-217c(3). Walker argues that because the Connecticut statute limits the length of time for which one's right to possess a firearm can be denied based on having a mental disease or defect, the federal statute is unconstitutional.

Firstly, as the instant forfeiture action was brought pursuant to the federal Gun Control Act, Connecticut law is clearly inapplicable.[3]

---

[3] The inapplicability of Connecticut law notwithstanding, the statute Walker seeks to apply and its 20-year limit pertain to the possession of a pistol or revolver, Conn. Gen. Stat. § 53a-217c(3), and thus would not apply to the instant action. The more appropriate Connecticut statute, section 53a-217 of the Connecticut General Statutes, provides that "[a] person is guilty of criminal possession of a firearm . . . when such person possesses a firearm . . . and (5) is

5

With regard to Walker's constitutional challenge, Walker asserts, in essence, that he has an individual right to bear arms under the Second Amendment and that 18 U.S.C. § 922(g)(4) infringes upon that right by discriminating against individuals who have *ever* been adjudicated as a mental defective or committed to a mental institution, regardless of their present state of mind. Since the Second Amendment does not impart an individual right to bear arms,[4] and because individuals who have been adjudicated as a mental defective or committed to a mental institution are not a suspect class, the test for determining the constitutionality of 18 U.S.C. § 922(g)(4) depends upon finding a rational basis for its prohibition. *See United States v. Toner*, 728 F.2d 115, 128 (2d Cir. 1984) ("[T]he statute [making it a felony for an illegal alien to possess a firearm in interstate commerce] passes constitutional muster if it rests on a rational basis . . . since the right to possess a gun is clearly not a fundamental right, . . . and since illegal aliens are not a suspect class.") (citing *United States v. Miller*, 307 U.S. 174 (1939)); *see generally Griffin v. Mann*, 156 F.3d 288, 291 (2d Cir. 1998) ("Because the statutory scheme does not involve a suspect classification or impinge on a fundamental right, it need survive only rational basis scrutiny.").

---

prohibited from . . . possessing or receiving a firearm pursuant to 18 U.S.C. 922(g)(4)." Conn. Gen. Stat. § 53a-217(5); *see also id.* § 53a-3(18)-(19) (defining pistol, revolver, and firearm). Thus, in enacting section 53a-217, the Connecticut legislature, like Congress, set no time restriction on the prohibition of possessing a firearm with regard to an individual "who has been adjudicated as a mental defective or who has been committed to a mental institution." 18 U.S.C. § 922(g)(4).

[4] *See Bach v. Pataki*, 289 F. Supp.2d 217 (N.D.N.Y. 2003), *aff'd*, 408 F.3d 75 (2d Cir. 2005), for an in-depth discussion of how the vast majority of courts have interpreted the Supreme Court's decision in *United States v. Miller*, 307 U.S. 174 (1939), to endorse only a *collective* right to bear arms, linked to the preservation of a well-regulated militia, and not as a source of *individual* rights.

The legislative history of the federal Gun Control Act is reviewed in detail in *Huddleston v. United States*, 415 U.S. 814 (1974), wherein the Supreme Court noted that the principal purpose of the Act "was to curb crime by keeping firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency." *Id.* at 824 (citation and internal quotation marks omitted). As further noted by the Second Circuit, "[t]he federal gun control statute is designed to prohibit the ownership of firearms not only by individuals who have already committed dangerous acts, but also by those with a potential for violence as well." *U.S. v. Waters*, 23 F.3d 29, 34 (2d Cir. 1994). Thus, "[t]he past adjudication or commitment disqualifies [an individual from possessing firearms] because such a person is too much of a risk to be allowed firearms privileges." *Id.* at 35 (citation and internal quotations omitted).

In light of Congressional intent to keep firearms away from persons considered potentially dangerous, the Court finds that there is a rational basis to prohibit the possession of firearms by individuals who have been committed to mental health institutions. *See United States v. Buffaloe*, 449 F.2d 779, 780 (4th Cir. 1971) (finding that 18 U.S.C. § 922(d)(2), which prohibits the sale of firearms to a person who has been adjudicated a mental defective or committed to any mental institution, was "not unconstitutional as to [defendant] because 16 months later he was discharged from the hospital"); *United States v. Jones*, 569 F. Supp. 395, 398-99 (D. S.C. 1983) (finding that 18 U.S.C. § 922(h)(2), governing receipt of a firearm by a person who has been committed to a mental institution, did not violate the equal protection component of the Fifth Amendment because there was a rational basis for keeping firearms away from persons considered potentially irresponsible and dangerous). Accordingly, the Court finds

7

that 18 U.S.C. § 922(g)(4) is not unconstitutional for the reasons urged.[5]

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment (docket entry # 12) is granted and a decree of forfeiture is hereby entered against the Defendants pursuant to 18 U.S.C. § 924(d)(1). The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, N.Y.
February 9, 2007

/s/
Denis R. Hurley,
United States District Judge

---

[5] As noted by the Second Circuit in *Waters*, the federal Gun Control Act provides an administrative remedy to former mental patients, viz. Walker could have petitioned the Attorney General under 18 U.S.C. § 925(c) to be relieved from his disability. 23 F.3d at 35.